**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Keith Paxton ALLISON and Nicole Monique Allison, Defendants–Appelles.**

**No. 03SA322.**

Supreme Court of Colorado, En Banc.

March 22, 2004.

David J. Thomas, District Attorney, First Judicial District, Donna Skinner Reed, Chief Appellate Deputy District Attorney, First Judicial District, Golden, Colorado, Attorney for Petitioner.

David A. Martinez, Denver, Colorado, Attorney for Keith Paxton Allison.

Dennis J. Jacobson, Lakewood, Colorado, Attorney for Nicole Monique Allison.

Justice HOBBS delivered the Opinion of the Court.

In this interlocutory appeal under C.A.R. 4.1 and section 16–12–102(2), 6 C.R.S. (2003), the prosecution challenges an order of the Jefferson County District Court granting the defendants' motion to suppress evidence. The order suppressed evidence that a police officer seized during warrantless reentries into a residence and pursuant to a search warrant obtained on the basis of evidence discovered in the residence during the warrantless reentries. The police went to the residence after a 911 hang-up call. A woman answered the door, revealed that a domestic dispute had occurred, and eventually let an officer inside. The officer removed the woman and man involved in the altercation from the residence and then reentered the residence without a search warrant.

The trial court found that neither probable cause, exigent circumstances, nor an emergency existed to support the warrantless reentries and suppressed all the evidence resulting therefrom. The evidence supports the trial court's findings of fact and conclusions of law. The circumstances in this case did not invoke the emergency aid exception to the Fourth Amendment's warrant require-ment to justify reentry and further investigation of the Allison home. Accordingly, we affirm the trial court's suppression order.

I.

On the morning of February 28, 2003, Officer Metcalfe from the Edgewater Police Department was dispatched to a residence in Edgewater, Colorado after a 911 hang-up call. When Officer Metcalfe arrived at the residence, he knocked on the door and Mrs. Allison answered. Mrs. Allison, one of the defendants, appeared nervous and out of breath. Officer Metcalfe saw blood on or around her nose. The officer asked Mrs. Allison if there was a problem. She said that everything was "okay" and that she just had an accident. She explained that she had tried to call back the 911 operator to tell them that the initial call was an accident.

Officer Metcalfe asked Mrs. Allison whether anyone else was in the residence. Initially, she said that no one else was present. However, during this discussion, Mrs. Allison appeared nervous and continuously glanced over her shoulder to look back into the home. Officer Metcalfe asked her several more times whether someone else was inside. Officer Metcalfe testified that he was concerned for the safety of Mrs. Allison as well as others and asked Mrs. Allison whether she had been involved in an altercation. Mrs. Allison said nothing had happened at the home.

Officer Metcalfe asked if he could enter the residence several times and Mrs. Allison refused, stating that no one else was inside and there was no altercation. Officer Metcalfe informed Mrs. Allison that he saw blood on her face and that she had a bloody nose, at which point Mrs. Allison admitted that she was in a fight with her husband, Mr. Allison. Officer Metcalfe asked again whether he could enter. Mrs. Allison repeated that no one else was inside. Finally, after a long discussion, Mrs. Allison agreed to let him enter the residence. The trial court found, and no party disputes, that this initial entry was either consensual or was justified because there was an emergency.

Once inside the residence, Officer Metcalfe observed that the home was in total disarray. In the front living room, there was glass on the floor, one chair knocked over, papers and curio items on the floor, disheveled furniture, a large picture with broken glass, and broken dishes. While Officer Metcalfe was in the living room with Mrs. Allison, she turned around and walked towards the back of the residence. Officer Metcalfe told her to stop but she refused. Officer Metcalfe followed her into another room where he encountered Mr. Allison, the other defendant in this case, walking down the stairs. Mr. Allison had a swollen and bloody bottom lip. From this vantage point, Officer Metcalfe observed the kitchen, dining room, and staircase. He testified that everything he could see was in disarray; there were broken vases and other broken items on the floor.

Another officer, Officer Olivett, arrived at the residence after Officer Metcalfe had entered the home. Officer Olivett removed Mrs. Allison from the home because she was impeding Officer Metcalfe's effort to communicate with Mr. Allison by screaming and pleading that he not be arrested. Once Mrs. Allison was removed from the home, Officer Metcalfe asked Mr. Allison what had occurred inside the residence. Mr. Allison informed Officer Metcalfe that an altercation had occurred between him and Mrs. Allison. He identified Mrs. Allison as his wife and explained that his injured lip and the broken items in the home were a result of their fight.

Officer Metcalfe asked if anyone else was in the residence. Mr. Allison stated that a man lived at the residence in one of the upstairs bedrooms, but that he did not know whether he was home. Officer Metcalfe testified that he did not fully believe either Mr. or Mrs. Allison as to whether anybody else was injured in the residence or involved in the altercation because Mrs. Allison had lied to him multiple times, and Mr. Allison, "was kind of nonchalant" and did not "want to disclose why they were arguing."

Officer Metcalfe took Mr. Allison into custody and removed him from the home. Offi-cer Metcalfe stepped outside the residence and Officer Olivett secured Mr. Allison in a patrol car. Then, Officer Metcalfe reentered the residence without a warrant or permission from the Allisons. Upon reentering, he called out "Edgewater police officer—is anyone there?" Although, as it turns out, there was another person in the home, no one responded. Officer Metcalfe testified that even though no one answered, he thought somebody could be in the home. Thus, he looked around the downstairs, did not see anyone, and then proceeded upstairs to see if others were injured. Officer Metcalfe testified as follows:

Well, I immediately proceeded upstairs because that's where Keith Allison had indicated the person would be if they were home. I felt comfortable that I had been able to observe the downstairs already; later to find out that there were portions that I hadn't seen. But at that point, I thought I—I thought I had. So I went upstairs, assuming that there was possibly somebody upstairs injured, seeing as Mr. Allison had walked down stairs.

Once upstairs, Officer Metcalfe noticed that a hallway led to three bedrooms. Officer Metcalfe walked down the hallway and saw that a bedroom door was opened. He looked inside the room and observed a bag of marijuana and a "water bong." He did not seize the evidence at that time, because according to his testimony, he had not "completed checking the home [for his] original reason, trying to find if there was anybody else in the home injured, in need of care or police assistance." Officer Metcalfe searched the rest of the upstairs and then walked downstairs.[1] While he was on his way outside the residence, he noticed a door in the room where he had originally contacted Mr. Allison. He opened the door and found the third individual, made contact with him, had a brief discussion with him, and then took him into custody. Officer Metcalfe took the individual outside and handed him over to Officer Olivett.

---

1. Officer Metcalfe testified that he made some "officer safety mistakes" when he overlooked a door to the basement, which prevented him from searching it during the second entry. He also testified that his search was not "thorough enough," but should not be considered casual.

After Officer Metcalfe retrieved a camera from his patrol car, he reentered the residence again and took pictures of the premises. He photographed the first floor and then went upstairs and photographed the marijuana and the water bong that he had seen the first time he went upstairs. He then seized this evidence without a warrant and went back outside. Officer Metcalfe spent a total of one hour at the residence from the initial entry through the reentries to when he left the residence after taking the photographs.

After the two reentries, Officer Metcalfe informed Mr. Allison that he had retrieved marijuana from the home and requested Mr. Allison's permission to return inside so he could further search the home. Mr. Allison refused permission, so Officer Metcalfe locked the residence, released the third individual, and transported Mr. and Mrs. Allison to the police station. At the station, Officer Metcalfe called the paramedics for "liability" reasons to examine Mr. and Mrs. Allison for injuries. He also obtained a search warrant based on the information gained from reentry into the residence, and conducted a thorough search of the residence and seized other items.

The prosecution charged both Mr. and Mrs. Allison with possession with intent to distribute marihuana, § 18–18–406(8)(b)(I), 6 C.R.S. (2003), possession of eight ounces or more of marihuana, § 18–18–406(4)(b)(I), 6 C.R.S. (2003), and possession of drug paraphernalia, § 18–18–428(1), 6 C.R.S. (2003). Mr. Allison was also charged with third-degree assault, § 18–3–204, 6 C.R.S. (2003), and criminal mischief, § 18–4–501, 6 C.R.S. (2003). Both Mr. and Mrs. Allison pleaded not guilty and each filed a motion to suppress all evidence the police found and confiscated from their home, including all photographs taken and observations or testimony related to such evidence, except those observations seen through the front door from the outside of the residence.

On October 24, 2003, following an evidentiary hearing, the trial court found that either consent or an emergency existed to justify the initial entry into the residence, but concluded that the emergency circumstances ended after Officer Metcalfe removed Mr. and Mrs. Allison from the home. The trial court suppressed the evidence gained from the second and third warrantless entries and the evidence subsequently obtained from the search warrant. The trial court found and concluded that there was no colorable claim of an emergency at the time the police reentered the home after removing Mr. and Mrs. Allison from it and no reasonable grounds to believe that there was an immediate danger to the safety of a third party at the time the reentry took place. The trial court also found that the reentry was not justified by probable cause or exigent circumstances that would obviate the requirement of obtaining a search warrant to conduct investigation of criminal activity. The trial court found the following:

> I do find that there was no exigent circumstance for him to reenter the house after he had the husband and wife, the two defendants in this case, out of the house.

> The Court again will find that there was no probable cause to reenter the house after the husband and wife . . . were out of the house. I do not find that there was probable cause then existing for criminal activity or exigent circumstances that required immediate police action.

> The Court finds there's no colorable claim of emergency, an emergency threatening life or safety of another at the time he entered, especially after the time he entered and called out and announced police, if anyone else was there, and there was no response.

> . . .

> The Court finds there's no reasonable grounds to believe there was an immediate danger of the safety of a third party at the time the reentry took place.

> . . .

> And there was no obvious danger to officers at that time or officer safety issues since they were outside when the officer reentered.

The trial court concluded that the possible presence of a third party in the home did not, under the circumstances, justify application of the emergency aid exception to the warrant requirement.

The fact that there may or may not have been a third party in the residence does not rise, in this Court's opinion, to the necessary showing or meet[ ] the threshold of showing ... immediate danger to the immediate safety of the possible third party that might have been in the residence.

The trial court suppressed evidence obtained from the second and subsequent entries, including the photographs, observations of the marijuana, and the marijuana itself. We affirm the trial court's order.

## II.

The evidence supports the trial court's findings of fact and conclusions of law. The circumstances in this case did not invoke the emergency aid exception to the Fourth Amendment's warrant requirement to justify reentry and further investigation of the Allison home.

### A. The Emergency Aid Exception to the Warrant Requirement

■ We give deference to the trial court's findings of historical fact and will not overturn them if supported by competent evidence in the record. *People v. Pate*, 71 P.3d 1005, 1010 (Colo.2003). As a reviewing court, our role is to determine whether the trial court's legal conclusions are supported by sufficient evidence and if it applied the correct legal standards. *Id.* We review the legal issues de novo because the legal effect of the facts is a question of law. *People v. Grazier*, 992 P.2d 1149, 1155 (Colo.2000).

■ The United States Constitution prohibits unreasonable searches and seizures.[2] "Unreasonable 'physical entry of the home' is the 'chief evil' against which the Fourth Amendment is directed." *People v. O'Hearn*, 931 P.2d 1168, 1173 (Colo.1997) (citations omitted). Warrantless searches and seizures are presumptively invalid unless they are justified by one of the established exceptions to the warrant requirement. *Pate*, 71 P.3d at 1010. Three exceptions to the warrant requirement are applicable to searches of the home: consent, probable cause and exigent circumstances, and the emergency aid exception. *People v. Hebert*, 46 P.3d 473, 478–79 (Colo.2002); *People v. Reynolds*, 672 P.2d 529, 531 (Colo.1983). The prosecution argues on appeal that the police reentry into the home was justified under the emergency aid exception. Thus, we limit our analysis to whether, under this exception, an emergency remained when the police reentered the home.

■ Under the emergency aid exception, the prosecution must prove that both an immediate crisis existed and the probability that assistance will be helpful.[3] *Pate*, 71 P.3d at 1011; *Hebert*, 46 P.3d at 479. The officer's primary purpose must be to render emergency assistance, not to search for evidence. *Pate*, 71 P.3d at 1014; *Hebert*, 46 P.3d at 479. An emergency search is strictly

---

**2.** The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Although we do not rely on the Colorado Constitution, it's protections are equivalent to the Fourth Amendment:

> The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

Colo. Const. art. II, § 7.

**3.** In *Pate*, we stated that either of these factors "would be sufficient to invoke the emergency aid exception." *Pate*, 71 P.3d at 1013. However, this is inconsistent with a long line of cases such as *Hebert*, 46 P.3d at 479, *People v. Smith*, 40 P.3d 1287, 1290 (Colo.2002), and *People v. Amato*, 193 Colo. 57, 60, 562 P.2d 422, 424 (1977), which require both an immediate crisis and the probability that assistance will be helpful. Despite the misstatement in *Pate*, our analysis in that case is consistent with our previous cases, because we concluded that even if an immediate crisis was present in that case, there was no evidence to show that the officers reentered the home to provide emergency assistance. *Pate*, 71 P.3d at 1014. Thus, we now clarify that both elements are required to invoke the emergency aid exception.

limited by the exigency that created the emergency and cannot support a general exploratory search. *Id.; Reynolds,* 672 P.2d at 531.

 The emergency aid exception does not require probable cause, but the police must have a "reasonable basis" approximating probable cause that associates the emergency with the area to be searched. *Hebert,* 46 P.3d at 479. "Reasonable basis" requires more than a "theoretical possibility that another's life or safety is in danger; rather, [it requires] a colorable claim that another's life or safety is in danger." *Id.* The police cannot use the "possibility" of an emergency to avoid the warrant requirement. *Id.*

 In conducting our review—like the trial court—we determine whether the police have a "reasonable basis" approximating probable cause that associates the emergency with the area to be searched by examining the totality of the circumstances as they would appear "to a prudent and trained police officer at the time the decision to conduct the warrantless search is made." *Id.* at 480. The prosecution has the burden of proving that the warrantless entry was justified under an exception given the circumstances of the case. *Id.*

B. The Warrantless Reentries in this Case

 We agree with the trial court's conclusion that the police officer's reentry into the home after removing Mr. and Mrs. Allison from it did not fall into the emergency aid exception to the warrant requirement.

1. Immediate Crisis

In this case, no immediate crisis remained when Officer Metcalfe reentered the residence. The evidence available to the police supported only the inference that the two of them had engaged in a domestic incident. Both had minor facial injuries and personal items had been thrown and broken. The officers observed no other blood or weapons outside or inside the home. Mr. Allison informed Officer Metcalfe that only he and his wife were involved in the altercation and Officer Metcalfe removed the couple from their home. At this point, the emergency

that justified the initial entry was over because the home was secure and the parties to the dispute were in custody. While domestic disputes can involve third parties and present a danger to children, the police here had no indication that children were involved or that any third party might have participated in the dispute and needed emergency assistance.

We look to our case law for guidance regarding the emergency aid exception. For example, in *People v. Thompson,* 770 P.2d 1282 (Colo.1989), the police were dispatched to a private residence because an anonymous caller stated that a violent domestic dispute was occurring. When the police arrived at the scene, they observed several spent .38 caliber casings on the driveway, and blood on the front porch, front door, and side of the home. The police knocked on the door and a woman answered whose smock was covered in blood. We upheld the warrantless entry under the emergency aid exception because the visual cues suggested that the woman was seriously injured and other injured persons might be located inside the residence. *Id.* at 1286.

In contrast here, when Officer Metcalfe entered the second time, the home was in disarray but no weapons were present and there were no signs that a gun had been used. Mrs. Allison only suffered minor injuries unlike the woman in *Thompson* whose smock was covered in blood. Officers observed no blood outside or inside the home that would indicate someone else was injured. Thus, the visual cues did not present an immediate crisis like they did in *Thompson.*

In *People v. Kluhsman,* 980 P.2d 529 (Colo.1999), where the homeowner told the police that he had killed a couple of people and many people were inside his home, there was more than a theoretical possibility that another person was injured or was in danger. We concluded that there was a reasonable basis to believe that people were in danger or injured inside the residence. *Id.* at 533. In contrast, in this case, Officer Metcalfe was merely told that an adult third party lived upstairs and that he might be present. Both of the Allisons informed Officer Metcalfe that

they were the only parties involved in the dispute and there were no signs that the third party was involved or injured.

In *Reynolds,* the police had consent to enter the home and break down a bedroom door where they found a dead woman's body. We applied the emergency aid doctrine to allow further search of the home for suspects or victims. *Reynolds,* 672 P.2d at 532. In the current case, the police removed the injured disputants and there were no other suspects participating in the incident and no indication of violence potentially endangering a third party.

The present case is more like those cases where we held that the emergency aid exception did not apply to justify a warrantless entry into a home. In *Hebert,* the police found a dead woman in a car and traced the car back to the defendant. The police then went to the defendant's residence. Although there were no reports of a commotion inside the home, the defendant was not armed, and did not look like he was in an altercation, the police entered without a warrant. The police testified that it "was not out of the realm of possibilities" that more victims were inside the home. *Hebert,* 46 P.3d at 477. Based on the information obtained from the warrantless entry, the police then obtained a search warrant.

The trial court found that the emergency aid exception did not justify the warrantless entry and redacted the information in the affidavits obtained by that entry. The trial court considered whether the legally obtained information in the affidavits established probable cause. On review, we held that the emergency aid exception did not justify the initial warrantless entry because no immediate crises existed, but that the redacted affidavits established probable cause for the search warrant. *Id.* at 481, 484. Because we analyzed whether the emergency aid exception justified the initial warrantless entry, that case provides guidance in resolving this case.

When Officer Metcalfe reentered the home, there was no commotion inside, no weapons were present, and the police had already placed the couple in custody. As in *Hebert,* Officer Metcalfe saw no activity to indicate that someone else would be in the home in need of emergency assistance; there was only a "possibility" that the third person remained in the home.

This case is also similar to *Pate.* In *Pate,* the police went to an apartment because someone said they heard a person shout, "let her go," and sounds of breaking glass. When the police arrived at the apartment, they had no information that any illegal activity was occurring inside or that any other suspects remained. They saw broken glass but no other signs of a commotion. The police entered without a warrant and noticed that the defendant was injured and bleeding. We held that the officers had no credible evidence that an immediate crisis existed at the defendant's apartment. *Pate,* 71 P.3d at 1014.

Here, after the officer removed the couple from the home, there was no indication that an emergency threatening the adult third party's life or safety existed. Moreover, although the couple sustained minor injuries and personal items were broken, those facts alone did not indicate that a third party was in need of emergency assistance.

The totality of the circumstances as they would appear "to a prudent and trained police officer at the time the decision to conduct the warrantless search is made" demonstrate that the police had no reasonable basis approximating probable cause to believe that an immediate crisis existed requiring the rendering of aid to a third party when they reentered the home after removing Mr. and Mrs. Allison. *Hebert,* 46 P.3d at 480. There was a mere possibility that the third party may have been in the residence, but these circumstances did not rise to the level of an immediate crisis. Thus, we conclude that the prosecution has not met its burden in proving that an immediate crisis existed.

### 2. Render Emergency Assistance

As the trial court found, the evidence demonstrated that Officer Metcalfe reentered the residence to conduct a criminal investigation, not to render emergency assistance. The trial court examined the police officer's ac-

tions in determining whether he or she acted with the purpose of rendering aid.

In *Pate* we concluded that no evidence existed to show that the police officers entered the residence to provide emergency aid. *Pate,* 71 P.3d at 1014. The police never asked any party involved whether anyone was injured, who caused the injury, or whether injuries had occurred inside the home. When the police officers observed that the homeowner was injured and bleeding, they never inquired whether he needed medical assistance.

Likewise, in this case, Officer Metcalfe did not ask either Mr. or Mrs. Allison if they needed medical assistance or if anyone else in the home was injured or needed medical assistance. Unlike *People v. Kluhsman,* 980 P.2d 529 (Colo.1999), where the police immediately called an ambulance to assist the wounded homeowner, Officer Metcalfe did not call the paramedics until more than an hour had elapsed from the time he first observed Mrs. Allison. Officer Metcalfe testified that he only called the paramedics for "liability" reasons.

The emergency aid exception encourages the police to act in the interest of personal health and safety. It is a limited exception to the Fourth Amendment's warrant requirement. In this case, the trial court correctly found that no evidence existed demonstrating the involvement of a third party who might be involved and require assistance.

The trial court found that the reentry involved a search for evidence and the gathering of it, rather than for the provision of assistance to potentially injured third persons. The police heard no cries for assistance and saw no evidence that a violent incident potentially endangering third persons had occurred. After the officers removed the Allisons from the residence, the home was secure and the police had time to apply for a warrant. The trial court's findings support its legal conclusions, and those conclusions conform to the applicable law.

### III.

Accordingly, we uphold the trial court's suppression order and return this case for further proceedings consistent with this opinion.