2014 CO 55

**Andrew HANSON, Petitioner**

v.

**COLORADO DEPARTMENT OF REV-
ENUE, DIVISION OF MOTOR
VEHICLES, Respondent.**

**Supreme Court Case No. 12SC788**

Supreme Court of Colorado.

June 30, 2014

Attorneys for Petitioner: Foster Graham Milstein & Calisher, LLP, Daniel S. Foster, Chip G. Schoneberger, Christopher Carrington, Denver, Colorado, Gillum Law Group, L.L.C., Shawn E. Gillum, Denver, Colorado, The Orr Law Firm, L.L.C., Rhidian D.W. Orr, Denver, Colorado

Attorneys for Respondent: John W. Suthers, Attorney General, Daniel D. Domenico, Solicitor General, Grant T. Sullivan, Assistant Solicitor General, Cathern Smith, Assistant Attorney General, Denver, Colorado

JUSTICE HOBBS delivered the Opinion of the Court.

¶ 1 The Division of Motor Vehicles, a section of the Colorado Department of Revenue (the "Department"), revoked Andrew Hanson's driver's license, following a hearing officer's determination that Hanson had improperly refused a blood alcohol test in violation of sections 42–2–126, C.R.S. (2013),[1] and 42–1301.1, C.R.S. (2013). The district court and the court of appeals both affirmed the Department's decision. Hanson petitioned us for review.[2]

¶ 2 Following the decision we announced today in *Francen v. Colorado Department of Revenue*, 2014 CO 54, 328 P.3d 111, we hold that under section 42–2–126, C.R.S. (2011), as it was in effect at the time of the hearing in this case, "probable cause" in the context of the driver's license revocation statute refers to the quantum and quality of evidence necessary for a law enforcement officer to issue a notice of driver's license revocation, not whether the officer's initial contact with the driver was lawful. We further hold that the exclusionary rule does not apply in driver's license revocation proceedings. Accordingly, we affirm the judgment of the court of appeals.

## I. Facts and Procedural History

¶ 3 On August 17, 2010, a third party reported to the sheriff's office that a silver Toyota Tundra was weaving through traffic, driving in excess of 100 miles per hour, and had continued to drive after striking a road sign. The third party followed the vehicle until it was parked at a residence in Parker, Colorado. When a police officer, Deputy Ashby, arrived at the residence, he saw a silver Toyota Tundra through a garage window that appeared to be damaged. Ashby called for an ambulance because the condition of the driver was unknown and the car had severe damage. Ashby proceeded to the

---

1. This statute was amended by the General Assembly in 2013, providing the driver with the right to "challenge the validity of the law enforcement officer's initial contact with the driver...." 2013 Colo. Sess. Laws. ch. 196, §§ 1–2, H.B. 13–1077, eff. May 11, 2013 ("In Colorado Revised Statutes, 42–2–126, add (8)(h) as follows: ... a driver may challenge the validity of the law enforcement officer's initial contact with the driver and the driver's subsequent arrest for DUI, DUI per se, or DWAI. The hearing officer shall consider such issues when a driver raises them as defenses."). Because this statutory provision was not in effect when the hearing in this case took place, we do not reach the question of whether this new statute would render a different result. *See* § 2–4–202, C.R.S. (2013) ("A statute is presumed to be prospective in its operation.").

2. We granted certiorari to review the following issues:

   1. Whether the expressed consent statute allows the Department of Revenue to revoke a driver's license pursuant to section 42–2–126, C.R.S. (2011), on the basis of a search that itself is the product of an illegal stop and arrest, regardless of whether the exclusionary rule applies in driver's license revocation proceedings.
   2. Whether the court of appeals erred in holding that a driver cannot rely on the exclusionary rule to raise the illegality of initial police contact as a defense in a civil driver's license revocation proceeding conducted pursuant to section 42–2–126, C.R.S. (2011).

front door of the house and made announcements. After he received no response, he entered the house through the open front door, without a warrant, and walked into the dining room.

¶ 4 Hanson's girlfriend came down from upstairs and spoke with Ashby. She retrieved Hanson from an upstairs bedroom and brought him downstairs. Hanson had red hair, matching the description from the original witness, and he had broken glass in his hair and ears and was bleeding. Ashby reported that Hanson showed several signs of intoxication, including bloodshot eyes, unsteady balance, slurred speech, and the odor of alcohol. An ambulance and two State Patrol troopers then arrived at the scene, and the ambulance took Hanson to a hospital. Trooper Sajczek, one of the State Troopers, followed. At the hospital, Hanson continued to show signs of intoxication, and Sajczek arrested Hanson to investigate a possible DUI, notifying Hanson of Colorado's expressed consent law. *See* § 42–4–1301.1(2)(a)(I), C.R.S. (2013). Hanson refused to take a blood alcohol test, and Sajczek gave Hanson a civil notice of driver's license revocation for violating the expressed consent law.

¶ 5 Hanson timely requested a hearing with the Department, and he included a request to subpoena Ashby, the officer who entered Hanson's home. The hearing officer granted the request, but Ashby failed to appear at the hearing. Hanson requested dismissal of the administrative action based on Ashby's failure to appear. The hearing officer denied Hanson's request and submitted Ashby's report into evidence.[3]

¶ 6 The hearing officer concluded that exigent circumstances—the driver might be injured, could not respond when Ashby called into the home, and needed immediate medical attention—justified entry into the home.[4] Therefore, the hearing officer declined to suppress the evidence under the exclusionary rule and issued a decision and order revoking Hanson's driver's license. Both the district court and the court of appeals affirmed the revocation, holding that the exclusionary rule does not apply in driver's license revocation proceedings and that the initial entry into the home was irrelevant.

## II.

¶ 7 Following the decision we announced today in *Francen,* we hold that "probable cause" in the context of the driver's license revocation statute, as it existed at the time of the hearing in this case, refers to the quantum and quality of evidence necessary for a law enforcement officer to issue a notice of driver's license revocation, not whether the officer's initial contact with the driver was lawful. We further hold that the exclusionary rule does not apply in driver's license revocation proceedings.

### A. Standard of Review

¶ 8 Judicial review of a driver's license revocation proceeding is governed by statute. *See* § 42–2–126(9)(b), C.R.S. (2013). "If the court finds that the department exceeded its constitutional or statutory authority, made an erroneous interpretation of the law, acted in an arbitrary and capricious manner, or made a determination that is unsupported by the evidence in the record, the court may reverse the department's determination." *Id.*

### 1. Probable Cause for Driver's License Revocation

¶ 9 Colorado's expressed consent law, § 42–4–1301.1, requires an individual to take a blood or breath alcohol test if he or she is requested to do so by a police officer who "[has] probable cause to believe that the person [has] been driving a motor vehicle in violation of section 42–4–1301," which is the Colorado statute criminalizing driving under the influence, while impaired, or with exces-

---

**3.** Whether or not the hearing officer should have dismissed the administrative action because of the police officer's failure to honor a subpoena, including whether Hanson's due process rights were violated, is beyond the scope of this decision.

**4.** Because we conclude that the legality of the initial encounter with police is irrelevant for the purpose of a driver's license revocation proceeding, we do not decide whether the hearing officer properly analyzed the exigent circumstances surrounding the entry into the home.

sive alcoholic content. § 42–4–1301.1(5), C.R.S. (2013). If a law enforcement officer has probable cause to believe that the driver's license should be revoked for refusal,[5] the officer is required to provide a notice of revocation to the driver and then submit an affidavit to the Department stating the information relevant to the revocation. § 42–2–126(5)(a)–(b)(I), C.R.S. (2013). The Department is required to revoke the driver's license of a person who refused to take or complete a blood, breath, saliva, or urine test as required by law. § 42–2–126(2)(h), (3)(c), C.R.S. (2013).

¶ 10 In *Francen*, we held that any evidence regarding the initial contact was irrelevant for the purpose of revoking a driver's license under the then-existing section 42–2–126. ¶ 16. We explained that the statutory language only requires that the police officer have probable cause to believe that the driver's license should be revoked, either due to excess blood alcohol content or refusal under the expressed consent law. *Id.* at ¶ 12–13. Probable cause in this context is held to exist where the facts and circumstances within the officer's knowledge of which he or she has reasonably trustworthy information are sufficient to cause a reasonably cautious police officer to believe that an offense has been committed. *Id.* at ¶ 13; *see also Colo. Dep't of Revenue, Motor Vehicle Div. v. Kirke*, 743 P.2d 16, 18 (Colo.1987). The hearing officer need not examine whether the police officer's initial contact was legal.

¶ 11 In this case, the State Trooper at the hospital—the law enforcement officer who issued the notice of revocation—had probable cause to believe that Hanson had driven a motor vehicle while intoxicated.[6] Accordingly, Hanson was required under the expressed consent statute to comply with the request

by the State Trooper to take a blood or breath test. When Hanson refused, he violated section 42–4–1301.1, and his driver's license was subject to revocation under section 42–2–126(3)(c), C.R.S. (2011). The hearing officer was not required to consider the legality of the first police officer's contact with Hanson because any evidence regarding the legality of the initial contact with Hanson is irrelevant for the purpose of revoking his license for refusing to take the blood or breath test. *See Francen*, ¶ 16.

## 2. The Exclusionary Rule is Inapplicable to Driver's License Revocation Proceedings

▓ ¶ 12 In *Francen* we decided to follow the majority of other states and held that the exclusionary rule does not apply in driver's license revocation proceedings. *Id.* at ¶ 28. We applied our previous decision in *Ahart v. Colo. Dep't of Corr.*, 964 P.2d 517, 520 (Colo. 1998), which requires that we assess "the deterrent benefits [under] a fact-specific analysis that usually involves two considerations: (1) whether the illegal agency conduct is 'inter-sovereign' or 'intra-sovereign'; and (2) whether the proceedings may be characterized as quasi-criminal." *See also United States v. Janis*, 428 U.S. 433, 446–47, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). Hanson argues that the police officer's report should have been excluded because it contained evidence obtained in violation of the Fourth Amendment. He argues that without this report, there would not have been sufficient evidence to sustain his driver's license revocation.

¶ 13 First, we conclude that the conduct here was inter-sovereign, rather than intra-sovereign. Conduct is inter-sovereign when the agency that committed the violation is

---

5. Refusal "means refusing to take or complete, or to cooperate in the completing of, a test of the person's blood, breath, saliva, or urine as required by section 18–3–106(4) or 18–3–205(4), C.R.S., or section 42–4–1301.1(2)." § 42–2–126(2)(h), C.R.S. (2013). Colorado's expressed consent law, § 42–4–1301.1, C.R.S. (2013) (formerly section 42–4–1202), requires an individual to take a blood or breath alcohol test if they are requested to do so by a police officer who "[has] probable cause to believe that the person [has] been driving a motor vehicle in violation of sec-

tion 42–4–1301." § 42–4–1301.1(5). The General Assembly has amended portions of this statute since the facts of this case took place. However, the amendments were unrelated and immaterial to the language at issue here.

6. Hanson does not dispute this finding, instead arguing that Ashby's report should have been excluded and as a result, that there would not have been sufficient evidence to sustain the revocation.

not the same entity seeking to introduce the evidence. *Ahart*, 964 P.2d at 520. In this case, Ashby was the first officer to respond to the scene, and he was the law enforcement officer whose conduct is at issue. The Division of Motor Vehicles—which sought to use the evidence—is a state entity tasked with regulating Colorado's motor vehicles and drivers. Because each of these entities is distinct in purpose and serves a different function, we conclude that this conduct is inter-sovereign. *See Francen*, ¶ 21–23. Any sanction against one is unlikely to affect the other. Even if the conduct here could be described as intra-sovereign, we would necessarily need to continue our analysis. *Ahart*, 964 P.2d at 521.

¶ 14 We conclude that the proceeding here, like the proceeding in *Francen*, is not quasi-criminal in nature. A proceeding is quasi-criminal if it provides for punishment, but is civil in form. *Ahart*, 964 P.2d at 520. "The more similar the objective of a civil proceeding to the purpose of criminal proceedings—punishment for violations of the law—the more likely exclusion of the evidence will foster deterrence." *Id.* In *Francen*, we discussed at length the many reasons why a driver's license revocation proceeding is not quasi-criminal. ¶ 25–27. Most importantly, the primary purpose of the proceeding is "[t]o provide safety for all persons using the highways of this state by quickly revoking the driver's license of any person who has shown himself or herself to be a safety hazard ...." § 42-2-126(1), C.R.S. (2013); *Francen*, ¶ 27.

¶ 15 Given that the conduct here is inter-sovereign and the proceeding is not quasi-criminal in nature, any deterrent effect of imposing the exclusionary rule is minimal, and it does not outweigh the substantial societal costs. *See Francen*, ¶ 28. Applying the exclusionary rule here would only ensure that hazardous drivers continue to endanger the public. *See id.*

¶ 16 We note that, even in cases where the exclusionary rule is otherwise inapplicable, courts can elect to apply the rule where law enforcement officials act in bad faith or where their conduct was "of such a flagrant nature as to shock the conscience of the court." *Ahart*, 964 P.2d at 522; *People v. Harfmann*, 638 P.2d 745, 748 (Colo.1981). Hanson argues that Ashby's entry into his home, without a warrant, was conduct that requires application of the exclusionary rule for deterrence purposes. We disagree.

¶ 17 Because we conclude that the exclusionary rule does not apply in driver's license revocation proceedings, we need not review the hearing officer's conclusion of law that Ashby's entry into the home was justified under the exigent circumstances exception to the Fourth Amendment warrant requirement. Instead, we need only exclude the evidence if Ashby's misconduct shocks the conscience of the court or was done in bad faith. *See Harfmann*, 638 P.2d at 748 ("Evidence which clearly and unequivocally establishes unlawful conduct of a lawyer should be admissible if the official misconduct does not shock the conscience of the court or is not in bad faith."). Hanson takes no issue with the hearing officer's findings of fact as to what information Ashby knew when he entered the home. Instead, Hanson argues that Ashby's conduct shocks the conscience and warrants exclusion in order to deter this kind of conduct in the future. Based on the evidence presented to the hearing officer, we simply cannot conclude that Ashby's conduct in this case shocks the conscience or was done in bad faith.

¶ 18 Accordingly, we hold that the Department did not err in considering Ashby's report.

### III.

¶ 19 We affirm the judgment of the court of appeals.

JUSTICE HOOD dissents.

JUSTICE HOOD, dissenting.

¶ 20 In this case, the majority extends *Francen v. Colo. Dep't of Revenue*, 2014 CO 54, 328 P.3d 111, beyond an illegal traffic stop to a warrantless home entry—"the 'chief evil' against which the Fourth Amendment is directed." *People v. Allison*, 86 P.3d 421, 426 (Colo.2004) (quoting *People v. O'Hearn*, 931 P.2d 1168, 1173 (Colo.1997)).

¶ 21 For the reasons articulated in my dissent to *Francen*, I would hold that Hanson had a statutory right to challenge the legality of the police officer's warrantless entry into his home. And although ostensibly provided the opportunity by the hearing officer to make such a challenge here, I agree with Judge Fox's dissent in this case that Hanson was denied due process because he had no opportunity to cross-examine the police officer about his warrantless entry. *See* § 42–2–126(1)(b), C.R.S. (2013) (one purpose of the license revocation statute is "[t]o guard against the potential for any erroneous deprivation of the driving privilege by providing an opportunity for a full hearing"); *Colo. Dep't of Revenue v. Kirke*, 743 P.2d 16, 21 (Colo.1987) (finding "significant" the fact that the defendant had "the opportunity to confront and cross-examine any of the officers involved" and had the "right to subpoena the initial officer and cross-examine him, but failed to do so").

¶ 22 For these reasons, I would reverse the judgment of the court of appeals and remand for further proceedings. I respectfully dissent.