**PEOPLE of the State of Colorado, Plaintiff–Appellant**

v.

**Kalum Darrel BROWN, Defendant–Appellee.**

No. 09SA100.

Supreme Court of Colorado, En Banc.

Oct. 13, 2009.

Don Quick, District Attorney, Russell Wentworth, Deputy District Attorney, Brighton, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Colorado State Public Defender, Sarah Quinn, Deputy State Public Defender, Brighton, Colorado, Attorneys for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

The prosecution brought this interlocutory appeal pursuant to C.A.R. 4.1, seeking to reverse the trial court's ruling suppressing

all evidence obtained as a result of a police seizure of the defendant, Kalum Brown, from a vehicle. The evidence includes a baggy of cocaine discovered in Brown's fecal material at the hospital by a nurse, where he was treated after being tased by police officers while obstructing their investigation at the scene of the vehicle stop.

Brown moved to suppress the evidence claiming that the police stopped the vehicle and himself without reasonable suspicion. He also argued that the police did not have probable cause to take him into custody after the police removed him from the vehicle in the course of their investigation.

The trial court granted Brown's motion to suppress the evidence. It found that, while the police did have a duty to make some inquiry into the condition of the driver and the passengers in the vehicle while responding to a shot-fired person-down anonymous call, the police exceeded their authority by seizing Brown and taking him into custody without reasonable suspicion or probable cause that he had committed or was committing a crime.

The prosecution argues that the trial court erred by granting the suppression order because the police had reasonable suspicion to stop the vehicle and conduct a criminal investigation of the occupants. Subsequently, the police had probable cause to arrest Brown for obstruction of their investigation and for resisting arrest. We agree and reverse the suppression order.

Based on the totality of the circumstances, we hold that the police had reasonable suspicion to stop the vehicle and investigate the occupants based upon police officers' at-the-scene observations. Further, they had probable cause to take Brown into custody when he did not comply with police orders and, instead, took combative actions toward them. Accordingly, we reverse the suppression order and return this case to the trial court for further proceedings consistent with this opinion.

## I.

On November 1, 2008, Aurora Police Officers Robert Wong, Steven Spanos, and Kent McCleerey responded to a shot-fired person-down anonymous call. Near the intersection of streets in Aurora, Colorado, the officers saw a gold four-door vehicle, idling in reverse gear, backed up against a fence on private property, and partially blocking a public sidewalk. Loud music sounded from the car stereo. Approaching the vehicle, the officers observed three apparently unconscious men slumped over in the car. Brown was in the driver's seat, with one man in the front passenger seat and another in the rear passenger seat.

The officers testified at the suppression hearing that they did not see weapons or any indication that the occupants were injured. Officer McCleerey reached into the vehicle, turned down the music, put the vehicle in park, and turned it off. With weapons drawn, the officers then ordered the vehicle occupants out of the car. Brown remained unresponsive until Officer McCleerey physically began to remove him from the vehicle using a wrist-control technique.[1]

Following removal from the car, Brown began to "clinch[ ] his fist and blade[ ] his body in such a manner that a boxer would in a boxing match, [assuming] a fighting stance with his arms up as if he's ready to hit somebody...." Officer McCleerey then twice ordered Brown to lie on his stomach. Brown did not comply with the orders. Officer McCleerey tased him. Brown fell to the ground, but "as soon as the five seconds were up, the driver again started becoming combative and trying to regain his footing."

Officer McCleerey tased Brown one or two more times when Brown "was either try[ing] to get to his feet or pull the taser bars out." Although Brown never lunged at or attempted to swing at any of the officers, he appeared to be threatening them. A big man, he assumed a combative posture and did not comply with police orders to remain on the ground while they conducted their investigation.

---

1. A wrist-control technique involves grabbing the wrist and hand and bringing the arm into the armpit. Officer Wong testified that the technique can be painful if resisted.

Paramedics arrived at the scene and transported Brown to a hospital by ambulance. Officer Wong accompanied Brown in the ambulance and remained outside Brown's hospital room. While examining Brown, the nurse found that he had defecated. In Brown's feces, the nurse discovered a small baggy of white rocks and turned it over to Officer Wong. The substance was later identified as cocaine.

Five days after his encounter with the police, the prosecution charged Brown with possession of more than one gram of a schedule II controlled substance, in violation of section 18–18–405(1), C.R.S. (2008), and obstructing a peace officer, in violation of section 18–8–104(1)(a), C.R.S. (2008).[2]

Before trial, Brown moved to suppress all physical evidence seized from his person or presence. Brown asserted that he was the subject of an illegal seizure because the police lacked reasonable suspicion for detaining him or probable cause to place him in custody. In addition, Brown moved to suppress all statements he made to the police. However, the prosecution "confess[ed] the motion" in regards to any statements, noting that "there are no statements in the file, and there are no statements we intend on introducing." The suppressed physical evidence apparently consists of the cocaine found in Brown's feces at the hospital while he was being treated for the tasing.

At the suppression hearing, the trial court found:

> The officers were dispatched to the scene and they found an unusual situation, it was. And I think they probably had a duty to make some inquiry. But I also believe that the officers, when they removed Mr. Brown from the vehicle, I'm going to suggest that he was in custody from and after that time.... I don't think there's any question about it.... I suspect that the officers did have an obligation, finding people nonresponsive, to contact some medical professionals.... But I do

have to find that Mr. Brown was in custody, and ... while I sympathize with the officers being dispatched and finding an unusual circumstance, I can't find a good reason under those circumstances to have taken Mr. Brown into custody. I think they needed more and I don't find it in this case.

The trial court based its suppression order on the physical control police took of Brown when they removed him from the vehicle and discounted Brown's subsequent conduct in reaction to the lawful order for him to go to and stay on the ground while they conducted their investigation. In this, the trial court erred.

## II.

Based on the totality of the circumstances, we hold that the police had reasonable suspicion to stop the vehicle and investigate the occupants based upon police officers' at-the-scene observations. Further, they had probable cause to take Brown into custody when he did not comply with police orders and, instead, took combative actions toward them. Accordingly, we reverse the suppression order and return this case to the trial court for further proceedings consistent with this opinion.

### A. Standard of Review

In suppression cases, we defer to the trial court's factual findings and will not disturb them if they are supported by competent evidence contained in the record. *People v. Bonilla–Barraza*, 209 P.3d 1090, 1094 (Colo.2009); *People v. Haley*, 41 P.3d 666, 670 (Colo.2001). We review the court's ultimate legal conclusions de novo. *Bonilla–Barraza*, 209 P.3d at 1094.

### B. Reasonable Suspicion and Probable Cause

The Fourth Amendment of the United States Constitution and article II, section 7 of the Colorado Constitution protect

---

**2.** Section 18–8–104(1)(a), C.R.S. (2008), provides:

> A person commits obstructing a peace officer ... when, by using or threatening to use violence, force, physical interference, or an obsta-

cle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority....

against unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 8–9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People v. Galvadon,* 103 P.3d 923, 927 (Colo.2005). Neither provision proscribes all police-citizen contact; rather, each prevents police interference with a person's reasonable expectation of privacy. *See Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *People v. Oates,* 698 P.2d 811, 814 (Colo.1985).

■ A seizure triggering the prophylactic protections of the Fourth Amendment occurs when "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry,* 392 U.S. at 20 n. 16, 88 S.Ct. 1868; *People v. Heilman,* 52 P.3d 224, 227 (Colo. 2002). Under the totality of the circumstances analysis, the court reviews whether a "reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *see also People v. Ealum,* 211 P.3d 48, 51 (Colo.2009).

■ There are two types of police-citizen encounters that constitute seizures under the Fourth Amendment, each requiring a different level of justification: (1) investigative stops or detentions requiring articulable reasonable suspicion and (2) arrests requiring probable cause. *People v. Marujo,* 192 P.3d 1003, 1006 (Colo.2008). Reasonable suspicion for an investigatory stop exists when the facts demonstrate that a prudent officer has an articulable basis for suspecting that a defendant is involved in criminal activity. *People v. Martinez,* 200 P.3d 1053, 1057 (Colo.2009). Probable cause for an arrest exists when there is a fair probability that the defendant has committed, is committing, or is about to commit a crime. *Id.* A determination of probable cause rests on all facts and circumstances known to the police at the time of the arrest. *People v. Schall,* 59 P.3d 848, 851 (Colo.2002).

■ Reasonable suspicion to make a stop for the crime of driving under the influence may arise when a police officer sees a person asleep behind the wheel of a car with its engine running. *Cf. Motor Vehicle Div. v. Warman,* 763 P.2d 558 (Colo.1988) (upholding license revocation for driving under the influence where a driver was found asleep at the wheel of a running car); *Brewer v. Motor Vehicle Div.,* 720 P.2d 564 (Colo.1986) (same); *Smith v. Charnes,* 728 P.2d 1287 (Colo.1986) (same).

■ Probable cause to arrest an individual for driving under the influence may arise after an officer makes an investigatory stop of an unconscious driver behind the wheel of a running car and finds further evidence of intoxication. *Cf. Warman,* 763 P.2d at 559; *Brewer,* 720 P.2d at 565; *Smith,* 728 P.2d at 1289.

## C. Application to this Case

■ The position of the vehicle across a sidewalk askew to the road, the blaring music emanating from the vehicle, and Brown's apparently unconscious state provided reasonable suspicion for the police to believe that he may have been driving under the influence of alcohol or drugs. Brown's behavior after police detained him gave officers probable cause to arrest for that offense.

Responding to a shot-fired person-down dispatch call, the police came upon the vehicle, which had come to rest against a private fence, was obstructing a public sidewalk, and was idling in reverse gear. The occupants of the vehicle, with Brown seated in the driver's seat, did not appear to be wounded. Music from the vehicle sounded so loudly that the responding officers had to yell to the occupants "at a screaming level." They did not respond and remained unconscious.

■ At this point, based on training and experience, a prudent police officer conducting the investigation could reasonably suspect that Brown had been and continued to be under the influence of drugs or alcohol while operating the vehicle. Thus, the police had the power to detain Brown and continue their investigation.

■ An officer reached into the vehicle, across Brown, put it in park, turned off the ignition, and turned down the music. Brown still did not awaken or react in any way. The officers attempted to communicate with the occupants. Brown remained unconscious

even after an officer tapped him on the shoulder.

Brown only regained consciousness as an officer was physically removing him from the vehicle. Upon finally awakening, Brown failed to follow police instructions and became combative. He "began clinching his fists and blading his body" and took "a fighting stance with his arms up as if he's ready to hit somebody." Brown refused two police orders to "get down on the ground."

■ Brown's complete unconsciousness while officers turned his car off, turned his music down, spoke to him, and tapped his shoulder, followed by his combativeness as soon as he woke up, provided enough additional evidence of intoxication to support probable cause to arrest Brown for driving under the influence.

■ In addition, under the totality of the circumstances, the police had probable cause to arrest Brown for obstructing a peace officer and resisting arrest. §§ 18–8–103 to –104; *see also Dempsey v. People*, 117 P.3d 800, 810–11 (Colo.2005) (holding that "while individuals may not be punished for mere verbal opposition to police authority, ... [obstruction of a peace officer] does include within its ambit 'use' as well as 'threat' of physical interference or obstacle. Thus, ... use or threats of 'physical interference' or 'an obstacle'" does constitute obstruction.). A defendant may not respond to an unreasonable search or seizure by a threat of violence against the officer and then rely on the exclusionary rule to suppress evidence pertaining to that criminal act. *People v. Doke*, 171 P.3d 237, 239 (Colo.2007).

Brown argues that (1) his combative reaction when the officers removed him from the vehicle was a "direct reaction to the painful wrist technique used during the illegal arrest" and (2) *Doke* "dealt with the suppression of new criminal acts and not the suppression of physical evidence obtained as a result of an illegal seizure." We disagree. The totality of the circumstances demonstrates reasonable suspicion for the stop and probable cause to take Brown into custody. Because Brown was lawfully in custody when the nurse discovered cocaine in his feces at the hospital, that evidence is admissible.

### III.

Accordingly, we reverse the suppression order and return this case to the trial court for further proceedings consistent with this opinion.