The PEOPLE of the State of
Colorado, Petitioner

v.

Arnold WEHMAS, Respondent.

No. 09SC1002.

Supreme Court of Colorado,
En Banc.

Nov. 22, 2010.

As Modified on Denial of Rehearing
Jan. 18, 2011.

Carol Chambers, District Attorney, Eighteenth Judicial District, Andrew Cooper, Chief Deputy District Attorney, Centennial, Colorado, Attorneys for Petitioner.

Brien & Martinez Law, LLC, Katherine Brien, Boulder, Colorado, Attorneys for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

We granted certiorari to review the district court's order affirming the county court's suppression of evidence on the grounds that warrantless home entry was not justified because (1) driving under the influence ("DUI"), a misdemeanor, is not a sufficiently grave offense, and (2) dissipating blood alcohol levels in a DUI suspect do not constitute the exigent circumstance of immediate risk of destruction of evidence. We affirm in part and reverse in part the district court's judgment. We hold that DUI is a grave offense that may support a warrantless entry into a person's home. However, under the facts presented here, the potential dissipation of the defendant's blood alcohol content ("BAC") is not a sufficiently exigent circumstance to justify warrantless home entry. We therefore affirm the suppression ruling on the ground that the officers acted unreasonably under these circumstances in entering the defendant's home without first obtaining a warrant.

## II. Facts and Procedural History

Arnold Wehmas was charged in county court with multiple offenses arising out of allegedly driving drunk, hitting a parked car in the parking lot of his apartment complex,

and going to his apartment without exchanging information with the owner of the car he hit. The charges included the misdemeanor offenses of DUI and leaving the scene after striking an unattended motor vehicle ("hit and run"). Because the arresting officers entered Wehmas's apartment without obtaining a warrant, he moved to suppress all evidence that was obtained as a result of the warrantless entry.

At the suppression hearing, the primary arresting officer was the only person to testify. He testified to the following facts:

At around 2:45 a.m., two witnesses observed Wehmas drive his van into a parked vehicle in the parking lot of his apartment complex. One of the witnesses, the owner of the damaged vehicle, came outside in response to the car alarm. After the collision, Wehmas parked his van nearby, spoke with the owner of the damaged vehicle, said he would "settle it," and left, going to his apartment.

Four officers arrived at the scene, interviewed the two witnesses, and investigated the damage. Both witnesses described Wehmas as being drunk. The owner of the damaged vehicle was able to identify the apartment Wehmas entered after leaving the parking lot.

Three of the officers knocked on Wehmas's door. Receiving no answer, the police contacted the property owner, who was able to identify Wehmas by name and by a photo from a previous arrest. After unlocking the apartment with the property owner's key, the officers entered Wehmas's apartment to arrest him. Finding Wehmas in bed asleep, they shook him awake. The arresting officer asked Wehmas how much he had to drink, and Wehmas responded "not much." The officer then advised Wehmas he was under arrest. In the process of helping Wehmas out of the apartment, the arresting officer observed several signs of intoxication, including bloodshot and watery eyes; slow, thick-tongued speech; poor balance; and a strong smell of an alcoholic beverage on Wehmas's breath.

During cross-examination, the officer agreed that the officers had not offered Wehmas an opportunity to take roadside field tests. And, the prosecution presented no evidence that the defendant was verbally offered—whether at the time of arrest or within the statutory two-hour time frame—a blood or breath test, or that he refused those tests.

The prosecution offered little evidence regarding the time frame within which the investigation and arrest took place. During cross-examination, the officer's responses were not expressed with certainty, but the officer estimated that the dispatch call occurred at 2:48 a.m., that he called the property owner around 3:00 a.m., and that it took the property owner approximately five minutes to arrive at the apartment. The police report justifying the warrantless arrest notes the dispatch call occurred at 2:48 a.m. and the time of arrest was 4:10 a.m. Thus, the time that elapsed from dispatch to arrest was one hour and twenty-two minutes.

Following the testimony, the prosecution argued that the evidence should not be suppressed because exigent circumstances justified the officers' warrantless entry into the apartment. The prosecution contended that the officers had acted reasonably because otherwise too much time would have lapsed and caused loss of evidence regarding whether Wehmas was drunk, and because Wehmas was a flight risk because he did not own the apartment.

Defense counsel contended that the officers did not act reasonably in entering Wehmas's home without first securing a warrant. Counsel argued that only the most serious felony offenses justify a warrantless home entry, and that potential dissipation of blood alcohol content did not constitute an exigent circumstance.

Ruling from the bench, the county court initially denied the motion to suppress. It concluded that the officers had probable cause to believe that Wehmas was driving under the influence. Assessing whether exigent circumstances existed, the court ruled that destruction of evidence in the form of dissipation of Wehmas's BAC was a sufficiently exigent circumstance because of the concern that the passage of time would reduce BAC and because DUI is a grave of-

fense. Accordingly, the county court denied Wehmas's motion to suppress evidence.

One year later on the morning of trial, the county court revisited and reversed its suppression ruling. In now granting the motion to suppress, the county court explained that DUI was not a sufficiently grave offense to justify the officers' warrantless entry into Wehmas's home because it was not a felony or a violent crime. In examining the factors of the case, the court rejected the notion that exigent circumstances justified warrantless entry because the case involved a minor accident in a parking lot, the officers knew Wehmas's location, and they could have secured his home while they obtained a warrant. Moreover, the court reasoned that, under the circumstances, the officers had sufficient time to obtain a warrant and could have secured the area to prevent Wehmas from driving again while intoxicated. The court, however, did not specifically revisit whether dissipating BAC alone constituted a sufficiently exigent circumstance. The county court suppressed all evidence obtained from the moment the police officers entered the apartment, including their observations.

On appeal, the district court affirmed the county court's revised ruling. Addressing the exigency determination, the district court concluded that the gravity of the offense was the first factor to consider. Because DUI is a misdemeanor offense, the court agreed with the county court and rejected the notion that it was a grave offense. In addition, it concluded that the gradual dissipation of BAC did not constitute an exigent circumstance because Wehmas could not take any action to hasten that dissipation. It reasoned that any delay in obtaining a warrant would have been minor and would not have compromised the BAC evidence such that the prosecution could not scientifically extrapolate Wehmas's BAC at the time of the collision. The district court therefore upheld the county court's suppression of evidence.

We granted the People's petition for certiorari to review the district court's affirmance.[1]

1. We granted certiorari on the following question: "Whether a DUI in Colorado is a sufficient-

### III. Analysis

In this case, we must determine whether the prosecution met its burden to establish that the risk of immediate destruction of evidence—in the form of dissipated BAC—justified warrantless entry into Wehmas's home.

■ We review the district court's legal conclusions de novo in determining whether the legal prerequisites of probable cause and exigent circumstances existed prior to the officers' entry into Wehmas's home. *Mendez v. People*, 986 P.2d 275, 280 (Colo.1999). We leave undisturbed the county court's findings of fact which are supported by competent record evidence. *Id.*

■ "The Fourth Amendment of the United States Constitution and article II, section 7 of the Colorado Constitution proscribe all unreasonable searches and seizures." *Id.* at 279; *Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) ("It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." (internal citation and quotation marks omitted)). Entry of a home without a warrant is invalid unless it is supported by both probable cause and "one of the narrowly defined exceptions to the warrant requirement," such as exigent circumstances. *Mendez*, 986 P.2d at 279 (citing *People v. Garcia*, 752 P.2d 570, 581 (Colo. 1988)); *Payton v. New York*, 445 U.S. 573, 586–90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

Given the posture of this case, the question of probable cause is not before us. Solely at issue is whether exigent circumstances were present.

■ The relevant facts for our inquiry are those "known at the time of the warrantless entry and search." *People v. Miller*, 773 P.2d 1053, 1057 (Colo.1989). We view the officers' actions objectively and do not focus on the officers' subjective motivation. *Brigham City v. Stuart*, 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (in evaluating whether an officer's actions were "rea-

ly grave offense to justify warrantless entry into a home, when exigent circumstances are present."

sonable," the officer's "subjective motivation is irrelevant"; the inquiry is whether the circumstances, viewed objectively, justify the action).

■ Any doubt whether officers reasonably concluded that a warrantless search was justified "must be resolved in favor of the defendant whose property was searched." *People v. Jansen*, 713 P.2d 907, 912 (Colo. 1986).

Before we consider whether, on the facts of this case and under Colorado law, risk of destruction of evidence created an exigent circumstance justifying the officers' warrantless entry, we review a core U.S. Supreme Court decision addressing the role gravity of an offense plays in the analysis.

## A. Gravity of the Offense

The People contend that because the county court erroneously concluded that DUI is not a serious offense, the county court's suppression ruling should be reversed. Although we agree with the People that a DUI in Colorado is a sufficiently serious offense, we conclude that under the facts of this case, dissipation of the defendant's BAC is not a sufficiently exigent circumstance to justify warrantless home entry based on the immediate risk of destruction of evidence.

In *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), a DUI defendant was arrested in his home after an eyewitness observed him driving erratically before he swerved off the road, abandoned his car in a field, and walked home on foot. *Id.* at 742–43, 104 S.Ct. 2091. In Wisconsin, however, a first-time DUI offense was classified as a noncriminal, traffic offense for which no imprisonment was available, indicating the state's view at the time that the offense was a relatively minor one. *Id.* at 754, 104 S.Ct. 2091. Addressing the relevance of the gravity-of-the-offense factor in the exigent-circumstances analysis, the Court opined:

> We ... conclude that the common-sense [multi-factor] approach utilized by most lower courts is required by the Fourth Amendment prohibition on "unreasonable searches and seizures," and hold that an

important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made.

*Id.* at 753, 104 S.Ct. 2091. The Court cited with approval lower court holdings that recognized gravity of the offense as a "principal factor to be weighed," *id.* at 752–53, 104 S.Ct. 2091 (citing *Dorman v. United States*, 435 F.2d 385, 392 (D.C.Cir.1970)), and noted that "the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of committing that offense." *Id.* at 754, n. 14, 104 S.Ct. 2091.

Accordingly, under the facts in *Welsh*, the warrantless arrest was invalid. *Id.* at 754, 104 S.Ct. 2091. The Court explained that even if evidence of the defendant's blood alcohol level might have dissipated in the time taken to obtain a warrant, a warrantless home arrest cannot be upheld where Wisconsin's expressed interest in the offense—as portrayed by the potential penalties—is minor. *Id.*

In sum, although recognizing and generally supporting the multi-factor approach employed to determine the existence of exigent circumstances, *Welsh* elevated the importance of the gravity of the offense to the calculus.

The Supreme Court later applied *Welsh* in a way that characterizes the case as drawing a bright-line rule between jailable and nonjailable offenses. *See Illinois v. McArthur*, 531 U.S. 326, 336, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001). Reviewing facts in which police officers prevented the defendant from entering his home while they obtained a search warrant, the *McArthur* Court distinguished its facts from those in *Welsh* in large part on the basis that the offenses in *McArthur* were jailable. *Id.*

We applied *Welsh*'s gravity-of-the-offense analysis in *Mendez v. People*, 986 P.2d 275 (Colo.1999), a case in which we concluded that the police had reasonably entered a motel room without a warrant after smelling the odor of burning marijuana coming from the room. There, we acknowledged the

gravity of the underlying offense as a critical consideration in determining whether a warrantless entry was reasonable. *Id.* at 283. However, we concluded that, in contrast to the nonjailable, minor offense in *Welsh,* the officers in *Mendez* "could not infer from the smell of burning marijuana whether the amount of marijuana in the room was enough to lead to a misdemeanor or felony possession charge." *Id.* at 283. Accordingly, "the potential gravity of the offense at issue ... was much greater than that in *Welsh.*" *Id.*

In giving great importance to the gravity of the offense, *Welsh, McArthur,* and *Mendez* establish that the jailable-nonjailable distinction serves as an indicator of the legislature's intent and its judgment regarding the seriousness of an offense.

■ Looking to the DUI offense in this case, we conclude that a first-time DUI offense is a sufficiently grave offense such that warrantless home entry may be valid. In Colorado, DUI is a misdemeanor and a jailable offense, and the minimum term of imprisonment increases with repeat offenses and with the severity of the offense. *See* § 42–4–1301(7), C.R.S. (2009) (repealed 2010) (replaced by § 42–4–1307, C.R.S. (2010)). The penalty for a first offense is imprisonment in a county jail for between five days to one year. § 42–4–1301(7)(a)(I)(A), C.R.S. (2009). Although the sentencing court may under certain circumstances suspend the mandatory minimum imprisonment, § 42–4–1301.3(2)(b), C.R.S. (2010), this sentencing option does not alter the fact that a person convicted of DUI as a first time offender may be jailed.

Consistent with *Welsh, McArthur,* and *Mendez,* we conclude that DUI is a sufficiently grave offense to potentially justify a warrantless home entry. In light of *Illinois v. McArthur,* it was legal error for the county court and district court to conclude otherwise.

■ As those cases suggest, however, this is not the end of the inquiry. Simply concluding that an underlying offense is grave does not create sufficiently exigent circumstances to justify warrantless entry. *See Commonwealth v. Williams,* 483 Pa. 293, 396

A.2d 1177 (1978) (finding warrantless home arrest for murder invalid after balancing the relevant factors and finding insufficient exigent circumstances, cited in *Welsh,* 466 U.S. at 752, 104 S.Ct. 2091). We must proceed to review the circumstances surrounding the warrantless entry into Wehmas's apartment.

### B. Exigent Circumstances

■ The legal analysis we employ to ascertain whether exigent circumstances justify a warrantless entry is a review of the totality of the circumstances, although the precise evaluation of factors is often tailored to the particular emergency at issue. *Cf. People v. Aarness,* 150 P.3d 1271, 1277–80 (Colo.2006) (after ruling out application of the three established categories of exigent circumstances, employing a multi-factor test to determine whether exigent circumstances were otherwise present).

■ In general, to determine whether there was a need "that could not brook the delay incident to obtaining a warrant," *Miller,* 773 P.2d at 1057 (quoting *Dorman v. United States,* 435 F.2d 385 (D.C.Cir.1970)), we employ the following set of factors:

(1) a grave offense is involved, particularly a crime of violence; (2) the suspect is reasonably believed to be armed; (3) there exists a clear showing of probable cause to believe that the suspect committed the crime; (4) there is a strong reason to believe that the suspect is in the premises being entered; (5) the likelihood exists that the suspect will escape if not swiftly apprehended; and (6) the entry is made peaceably. One additional factor is whether the warrantless entry is made at night.

*Id.*

We have previously recognized certain common factual scenarios that often present exigent circumstances, and we have incorporated and tailored this general totality-of-the-circumstances analysis accordingly. For example, when we are presented with a claim of a risk of immediate destruction of evidence, our cases consistently explain that the prosecution must show "an articulable basis on the part of the police to justify a reasonable belief that evidence is about to be re-

moved or destroyed." *People v. Turner*, 660 P.2d 1284, 1287–88 (Colo.1983), *disapproved on other grounds by People v. Schoondermark*, 759 P.2d 715, 719 (Colo.1988), *cited in Garcia*, 752 P.2d at 581, *People v. Crawford*, 891 P.2d 255, 258–59 (Colo.1995), and *Mendez*, 986 P.2d at 282; *see also Aarness*, 150 P.3d at 1278 (citing *Mendez*); *Miller*, 773 P.2d at 1058 (citing *Garcia*).

■ These cases also have explained that the likelihood of destruction must be real and immediate such that a warrant could not be obtained in time, and the "mere fact that the evidence is of a type that is easily destroyed, does not, in and of itself, constitute an exigent circumstance." *Turner*, 660 P.2d at 1288, *cited in Crawford*, 891 P.2d at 259; *Mendez*, 986 P.2d at 282 (citing *Crawford*); *Aarness*, 150 P.3d at 1278 (citing *Mendez*). And, "[i]f it is possible for police in such a circumstance to secure the premises and wait for a warrant without risking the loss of evidence, such action is *required.*" *Mendez*, 986 P.2d at 282 (emphasis added).

Risk of evidence destruction commonly arises in the context of contraband, such as marijuana or other illicit drugs. In these circumstances, we have crafted additional factors to consider—not unlike those in *Miller*—such as:

> (1) the degree of urgency and the time required to obtain a warrant; (2) reasonable belief that evidence or contraband would be removed or destroyed[;] (3) information that those in possession of the evidence or contraband are aware that the police are closing in[;] and (4) the ease of destroying the evidence or contraband and the awareness that narcotics dealers often try to dispose of narcotics and escape under the circumstances.

*Crawford*, 891 P.2d at 258 (quoting *People v. Bustam*, 641 P.2d 968, 972–73 (Colo.1982)).

■ In sum, our analysis is founded on the reasonableness of the officers' actions.

Each factor focuses our inquiry on the degree to which the circumstances require immediate action. Given the strong constitutional protections against warrantless home entry, there must be a significant showing of urgency before concluding that it was reasonable for officers to make a home entry without first obtaining a warrant. This high burden properly protects the sanctity of the home in accord with the federal and state constitutions.

■ In this case, even before we reach the factors unique to the destruction of evidence, the circumstances suggest that the prosecution has failed to show sufficiently exigent circumstances to justify a warrantless entry.[2] Although there was probable cause that a grave offense had been committed and it was likely that Wehmas was in the apartment, there was no evidence or objectively reasonable belief that he was armed or that he would escape if he was not quickly apprehended. There was also no evidence that obtaining a warrant was problematic because it was late at night; instead, the night-time entry weighs against considering the officers' actions to be reasonable under the circumstances because of the highly intrusive nature of making the entry. The alleged offense had ended, no weapons were involved, and the defendant had not re-emerged from his apartment.

Turning to the destruction of evidence, this case presents a slight twist on this common form of exigency. In contrast to contraband or other physical evidence of a crime which can quickly be flushed or burned, evidence of blood alcohol content—an ever-changing characteristic that is wholly internal to a defendant—cannot be actively "destroyed" as that term is typically understood. Moreover, it is evidence that may or may not be available even if law enforcement did gain entry into a home because there is no guarantee that the suspect will assent to a chemical test. Such a test, though mandatory in Colo-

---

2. The degree of gravity and its influence on our analysis will vary with the severity of the DUI charged. In this case, Wehmas was not charged with the more severe DUI crimes, which, under Colorado law, would have given the officers a basis for physically compelling the defendant to undergo chemical testing. *See* § 42–4–1301.1(3),

C.R.S. (2010) (an officer cannot physically require submission to a chemical test unless there is probable cause to believe that the person has committed criminally negligent homicide, vehicular homicide, assault in the third degree, or vehicular assault).

rado, cannot be physically compelled for driving offenses not involving violence or harm to a victim. *See* § 42–4–1301.1(3), C.R.S. (2010) (an officer cannot physically require submission to a chemical test unless there is probable cause to believe that the person has committed criminally negligent homicide, vehicular homicide, assault in the third degree, or vehicular assault); § 42–4–1301(2)(d), C.R.S. (2010) (if a person refuses chemical testing and is subsequently tried for DUI or DWAI, the refusal is admissible at trial); *cf., State v. Lovig,* 675 N.W.2d 557, 566 (Iowa 2004) ("[A] defendant is permitted to refuse a chemical test . . . [and therefore] the claim of destruction of evidence in the context of blood alcohol content testing may be illusory."); *Commonwealth v. DiGeronimo,* 38 Mass.App.Ct. 714, 652 N.E.2d 148, 158 (1995) (holding that under state law, police may not constitutionally compel a suspect to take a field sobriety, breathalyzer, or blood test, and therefore "police can have no reasonable expectation that a warrantless entry will enable them to obtain or preserve such evidence").

With these characteristics in mind, we must conclude that although BAC certainly dissipates gradually with time, *Schmerber v. California,* 384 U.S. 757, 770–71, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), this dissipation, as a general matter, does not create the urgency and imminence of loss contemplated by our governing precedent.[3] Because of the nature of BAC, there was no immediate danger that all or critical evidence would be removed or destroyed. Delays in obtaining BAC are characteristic of DUI offenses and are even contemplated in the DUI laws creating incentives to timely comply with chemical testing. *See* § 42–4–1301.1(2)(a)(III), C.R.S. (2010) ("the person must cooperate with the request [for a blood or breath test] such that the sample of blood or breath can be obtained within two hours of the person's driving"); § 42–2–126(2)(a)(II), C.R.S. (2007) (repealed and reenacted 2008) (refusal to take tests requires administrative revocation of drivers license). *See also Augustino v. Colo. Dept. of Rev.,* 193 Colo. 273, 276, 565 P.2d 933, 935 (1977) (explaining that the pur-

pose of mandatory drivers license revocation procedures is to encourage suspected drunk drivers to voluntarily undergo blood alcohol testing and assist in the prosecution of such crimes).

 A delay in obtaining a BAC will lead to a gradual loss of perhaps the strongest evidence of a defendant's BAC at the time of the offense because of the ongoing metabolism of alcohol. *See* § 42–4–1301(6)(a), C.R.S. (2010) (setting forth certain presumptions or inferences based on a defendant's BAC if it is taken "at the time of the commission of the alleged offense or within a reasonable time thereafter"). But this does not translate into a complete loss of admissible evidence because expert testimony can be used to otherwise analyze and extrapolate a person's BAC to provide an opinion as to the BAC at the time of the offense. Issues underlying extrapolation go to the weight of the evidence and not its admissibility. *See People v. Emery,* 812 P.2d 665, 667 (Colo. App.1990); *cf. Charnes v. Boom,* 766 P.2d 665, 669 (Colo.1988) ("[T]he relevance of the results of a chemical test in a criminal trial . . . is not limited to tests conducted within one hour of the alleged offense. Instead, such test results may be admissible and provide significant evidence if obtained within a reasonable time after the alleged offense, even if that time exceeds one hour.").

 It is possible that a defendant could interfere with the accuracy of a BAC test by consuming additional alcohol while officers are in the process of obtaining a warrant. *See, e.g., State v. Paul,* 548 N.W.2d 260, 267 (Minn.1996) (concluding that exigent circumstances justified warrantless entry in part because the defendant "might have drunk more alcohol, making a chemical test unreliable"); *City of Orem v. Henrie,* 868 P.2d 1384, 1393 (Utah Ct.App.1994) (noting concerns that a defendant could tamper with blood alcohol evidence by consuming additional alcohol in the home, "inviting the assertion that a blood or breath alcohol level above the statutory threshold was caused by post-offense alcohol consumption"). Howev-

---

**3.** As we have previously noted, Wehmas was not charged with one of the more serious DUI crimes, which would affect the totality-of-the-circumstances analysis. *Supra* note 2.

er, concerns about post-offense BAC tampering go the weight of the evidence, and hinge upon specific facts and assertions that may or may not be made by a defendant in a given case. Speculation that a defendant may consume more alcohol while officers obtain a warrant does not, in and of itself, create an exigency. Whether a defendant did consume more alcohol and therefore affected a BAC test are issues of fact to be determined by the factfinder.

 As is noted above, in Colorado the officers could not have compelled a chemical test against Wehmas because the underlying offenses were not of the type for which testing may be physically compelled. Accordingly, the need to obtain BAC evidence will not, as a general rule, create the level of imminency required to override the constitutional protection against warrantless entry.

Nor can we conclude on the specific facts of this case that the need for Wehmas's BAC compelled the officers to make a warrantless entry without delay. The prosecution has failed to demonstrate that the officers had insufficient time to get a warrant under the circumstances. Four officers were on the scene; one hour and twenty-two minutes elapsed between the dispatch call and the time of arrest; no evidence was presented of any attempt to obtain a warrant within that time despite the apparent intent to enter the apartment; and no evidence was presented showing an inability to secure the premises while waiting for a warrant. We therefore conclude that the prosecution has not met its burden to show that exigent circumstances justified a warrantless entry into Wehmas's home.

### IV. Conclusion

We reverse the district court's ruling that DUI was not a sufficiently grave crime to support a warrantless home entry by the police. DUI is a jailable offense that meets the test required by the Supreme Court. On the facts, however, we affirm the district court's ruling affirming the county court's suppression of the evidence obtained after the warrantless entry into Wehmas's apartment.

Justice EID concurs in part and dissents in part, and Justice COATS joins in the concurrence in part and dissent in part.

Justice EID, concurring in part and dissenting in part.

I agree with the majority that both the county court and the district court erred in holding that a DUI is not a sufficiently grave offense to justify a warrantless entry into a home under exigent circumstances, and therefore join Part III.A. of its opinion. Because the gravity of the offense is a significant factor in determining whether exigent circumstances exist, however, I would find that the lower courts' error impacted the entirety of their exigency analysis. The case should therefore be remanded for determination of whether, using the proper analysis that considers a DUI a sufficiently grave offense, exigent circumstances existed. Accordingly, I dissent from Part III.B. of the majority's opinion determining that exigent circumstances did not justify entry into the home in this case.

I am authorized to say that Justice COATS joins in this opinion concurring in part and dissenting in part.