2015 COA 110

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Mark Allen TERHORST, Defendant– Appellant.**

**Court of Appeals No. 13CA1133**

Colorado Court of Appeals, Div. I.

Announced August 13, 2015

Cynthia H. Coffman, Attorney General, Ethan E. Zweig, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Mark Allen Terhorst, Pro Se.

Opinion by JUDGE BOORAS

¶1 Defendant, Mark Allen Terhorst, appeals his judgment of conviction entered on jury verdicts finding him guilty of four counts of contributing to the delinquency of a minor. We affirm.

I. Background

¶2 Defendant held a birthday party for his seventeen-year-old son at their large multistory home in Lakewood. Hundreds of teenagers attended the party. Police responded to the party after being called three separate times by a neighbor who reported that "underage kids" were there drinking alcohol. This neighbor also told the police that he believed there were many guns in the house.

¶3 Because of previous contacts at the residence and concern about possible firearms, the police felt that it was necessary to have several officers respond instead of only a two-person team. The officers arrived at a staging area near the house about an hour after the first call and planned their approach.

¶4 As they approached the residence, a number of juveniles fled the residence. One officer, who was covering the perimeter of the house, tried to talk to some of the juveniles to assess the situation. One group included an "extremely intoxicated" sixteen-year-old who said that she had consumed six beers at the party. Another seventeen-year-old stated that the residence had alcohol and kegs of beer, which had not been brought by the guests. Through the windows, the officer could see a number of people inside the house running and panicking. The officer agreed during the suppression hearing that panic was a typical response from teenagers when the police broke up a party.

¶5 As the officers approached the residence, a different officer saw beer cans lying outside the house. He testified that the people fleeing the home appeared to be "high school age."

¶6 Defendant opened his front door when the officers knocked. He attempted to shut the door behind him as he stepped out to talk with the officers, but one officer put his foot in the doorway to keep the door from closing completely. Defendant said that he was having a birthday party for his son and denied that any juveniles had been drinking alcohol. However, one of the officers said that he could see what appeared to be underage juveniles drinking inside.[1] At this point, defendant became confrontational and the police handcuffed him and placed him in a patrol car. The officers then went into defendant's home and cleared it of teenagers. Approximately 150 to 200 teenagers left the home. Officers went floor to floor checking the rooms to "make sure there is nobody sick or unconscious, needing … medical attention." At the home, they found many cups, bottles, and beer cans containing alcohol.

¶7 Defendant was charged with eight counts of contributing to the delinquency of a minor and one count of child abuse. The People later dismissed the child abuse charge and four counts of contributing to the delinquency of a minor. Defendant was tried on the remaining four counts.

¶8 At trial, defendant claimed that two separate parties had occurred that night. He hosted the first party, which was a birthday party for his son. He claimed that there had been no alcohol at that party. Defendant testified that he left home to go on a date as the first party was winding down, and that he returned home to the second party that the police eventually broke up. He testified that he was shocked to find that a second party with alcohol was going on, and that he had been trying to remove the

---

1. The officer testified that he saw people who appeared to be juveniles drinking from red plastic cups and beer cans.

teenagers when the police showed up and arrested him.

## II. Discussion

¶ 9 Defendant makes two primary contentions on appeal. First, he argues that he was improperly denied a fifth peremptory challenge in violation of section 16–10–104, C.R.S.2014, and Crim. P. 24(d)(2). Second, he argues that the trial court erred in denying his motion to suppress evidence obtained after the warrantless entry and search of his home.

### A. Peremptory Challenges

#### 1. Standard of Review and Preservation

■ ¶ 10 During jury selection, defendant's counsel used peremptory challenges to strike two potential jurors, but waived defendant's third challenge. After the trial court filled the seat of the fourth juror the People struck, defendant's counsel waived defendant's fourth peremptory challenge. The prosecutor then accepted the jury as empaneled. The trial court asked, "Anything further from the defense?," to which defense counsel responded, "I think I get a fifth" peremptory challenge. At a bench conference, the trial court explained that it did not think defendant was permitted to use his last peremptory challenge "after having passed on the people that are in there." After further discussion between trial counsel and the court, defense counsel said, "Okay. Never [m]ind."

¶ 11 The People argue that defendant both waived and failed to preserve his argument for appeal that the trial court erred by denying him his fifth peremptory challenge. We disagree and conclude that defendant's counsel made a sufficient argument before the trial court to preserve this issue for appeal. We also conclude that counsel's statement at the end of the bench conference—"Okay. Never [m]ind"—did not amount to a waiver of the argument.

¶ 12 At some point after receiving an adverse ruling on an objection or argument at trial, trial counsel must accept the trial court's decision and move on. This acquiescence is not akin to a waiver, but instead permits the party adversely affected by the ruling to seek appellate relief—as defendant does here. See People v. Rhea, 2014 COA 60, ¶ 55, 349 P.3d 280 (objection that sufficiently alerts trial court to a particular issue to correct any error preserves issue for appellate review).

■ ¶ 13 Thus, we review the trial court's decisions regarding peremptory challenges for an abuse of discretion. People v. Reese, 670 P.2d 11, 13 (Colo.App.1983). To the extent defendant makes a statutory or rules interpretation argument, we review the trial court's interpretation of statutes and the Colorado Rules of Criminal Procedure de novo. Kazadi v. People, 2012 CO 73, ¶ 11, 291 P.3d 16.

#### 2. Discussion

■ ¶ 14 Defendant argues that he was denied his right to use a fifth peremptory challenge during jury selection in violation of section 16–10–104 and Crim. P. 24(d)(4). We disagree.

¶ 15 Defendant was entitled to five peremptory challenges pursuant to section 16–10–104. The Colorado Rules of Criminal Procedure govern the mechanics of exercising peremptory challenges. § 16–10–104(2). Crim. P. 24(d)(4) provides the applicable procedure governing the exercise of peremptory challenges:

> Peremptory challenges shall be exercised by counsel, alternately, the first challenge to be exercised by the prosecution. A prospective juror so challenged shall be excused, and another juror from the panel shall replace the juror excused. *Counsel waiving the exercise of further peremptory challenges as to those jurors then in the jury box may thereafter exercise peremptory challenges only as to jurors subsequently called into the jury box without, however, reducing the total number of peremptory challenges available to either side.*

(Emphasis added.)

¶ 16 As noted, defendant's counsel used peremptory challenges to strike two potential jurors, but waived his third challenge. After the trial court filled the seat of the fourth

juror the prosecutor struck, defendant's counsel waived his fourth peremptory challenge. The prosecutor then accepted the jury as empaneled, and the court denied defendant any further peremptory challenges.

¶17 Under Crim. P. 24(d)(2), after having previously waived the use of a peremptory challenge, counsel can only make peremptory challenges "as to jurors subsequently called into the jury box." Thus, when defendant's counsel waived his fourth peremptory challenge, he risked that the prosecutor would not use a fifth peremptory challenge—thus resulting in no change to the composition of the jury box. Because no jurors were called into the jury box after defendant's counsel's waiver, defense counsel lost his ability to use any additional peremptory challenges.

¶18 Defendant argues that the trial court's ruling misapplied Crim. P. 24(d)(4) because the rule "very specifically states that any side waiving use of peremptory challenges will not have its total amount of peremptory challenges reduced." However, we do not interpret the last clause of the rule as broadly as defendant advocates.

¶19 The rule specifically eliminates counsel's opportunity to utilize peremptory challenges if counsel has waived a challenge and no new jurors have entered the jury box. The rule further provides that no reduction in challenges shall occur as a result of such a waiver. We conclude that there is no conflict between the number of peremptory challenges provided by the statute and the provision of the rule regarding nonreduction of peremptory challenges where there has been a waiver. Interpreting the rule otherwise results in the conflict defendant asserts. *People v. Trujillo*, 251 P.3d 477, 480–81 (Colo.App.2010) ("[C]ourts should give effect to every provision of a statute while avoiding conflicts....").

¶20 In other words, where counsel waives a peremptory challenge, counsel does not lose that challenge and can still take advantage of all available peremptory challenges to which the party is entitled, so long as, after waiver, at least one new juror is called into the jury box. By way of example, if defendant's counsel had used his fourth peremptory challenge, and a new juror had then come into the box, even if the prosecutor did not utilize the People's fifth peremptory challenge, defendant's counsel could still have used his additional peremptory challenges as to the new juror and then to the next new juror called—even though he initially waived his third challenge.

¶21 We thus conclude that the trial court properly interpreted the applicable provisions governing the exercise of peremptory challenges and thus did not abuse its discretion.

### B. Warrantless Entry

#### 1. Standard of Review and Preservation

¶22 Defendant preserved this issue for appeal by moving to suppress the evidence found inside his house.

¶23 When reviewing a trial court's denial of a motion to suppress, we defer to the court's factual findings and will not disturb those findings if they are supported by competent evidence in the record. *People v. Brown*, 217 P.3d 1252, 1255 (Colo.2009). However, we review the trial court's conclusions of law de novo. *Id.*

¶24 We may affirm a denial of a suppression motion "on any basis for which there is a record sufficient to permit conclusions of law, even though they may be on grounds other than those relied upon by the trial court." *Moody v. People*, 159 P.3d 611, 615 (Colo.2007).

#### 2. Trial Court's Ruling

¶25 Defendant argues that the trial court erred in denying his motion to suppress evidence obtained as a result of the police officers' warrantless entry. We disagree that any evidence must be suppressed, albeit on different grounds than those relied on by the trial court. *See id.*

¶26 The trial court denied defendant's motion to suppress after holding a hearing and reviewing post-hearing briefs. The court initially concluded that the offenses charged in the matter were "sufficiently grave to potentially justify a warrantless en-

try." It then concluded that the warrantless entry did not fall under the "emergency aid exception" to the warrant requirement, in large part because no particularized emergency was identified at the time of entry. The court ultimately concluded, however, that the warrantless entry was permissible under the exception for entry when it is likely that relevant evidence located on the premises will be removed or destroyed before a warrant can be obtained.

¶ 27 The court based its decision on the officers' testimony that they observed "hundreds of party participants" "evacuating the house" and generally "panicking." The court concluded that this "created a real and immediate threat that, if the agents did not enter immediately, the evidence of which individuals had been drinking in the house, and whether such individuals were underage, would be lost." The court also concluded that the officers' concern that alcohol containers and their contents would be destroyed was unfounded, and thus that aspect of the officers' reasoning did not support the warrantless entry.

### 3. Analysis

■ ¶ 28 "The Fourth Amendment of the United States Constitution and article II, section 7 of the Colorado Constitution proscribe all unreasonable searches and seizures." *Mendez v. People*, 986 P.2d 275, 279 (Colo.1999). Entry of a home without a warrant is presumptively invalid, but there are three exceptions to the warrant requirement: (1) consent, (2) probable cause and exigent circumstances, or (3) an emergency threatening the life and safety of another. *People v. Allison*, 86 P.3d 421, 426 (Colo.2004); *People v. Hebert*, 46 P.3d 473, 478 (Colo.2002).

¶ 29 In this case, the evidence at the suppression hearing did not support a finding of consent.[2] However, we conclude, although for different reasons than those identified by the trial court, that the warrantless entry was justified under the exigent circumstances exception. Because entry under the exigent circumstances exception was proper, we need not address whether entry was also justified under the emergency aid exception.

■ ¶ 30 Whether an underage drinking party attended by hundreds of suspected teenagers creates an exigent circumstance permitting police to enter a home without a warrant is an issue of first impression in Colorado. Case law from other states addressing similar issues is split. *See, e.g., J.K. v. State*, 8 N.E.3d 222, 237 (Ind.Ct.App.2014) (mere occurrence of underage drinking does not give law enforcement *carte blanche* to enter a person's home without a warrant); *State v. Blackburn*, 960 A.2d 1148, 1150 (Me. 2008) (warrantless entry was justified by exigent circumstance of possible destruction of evidence by teenagers emptying and concealing alcohol); *State v. Andrews*, 177 Ohio App.3d 593, 895 N.E.2d 585, 590–92 (2008) (reversing conviction for contributing to delinquency of a minor where court concluded that no exigent circumstances existed because suspected underage drinkers were confined to the basement and there was no "chaotic scene"); *State v. Jangala*, 154 Or. App. 176, 961 P.2d 246, 247 (1998) (reversing suppression order as to evidence found at teenage drinking party, because of potential destruction of evidence); *see also Howes v. Hitchcock*, 66 F.Supp.2d 203, 215–16 (D.Mass.1999) (concluding that threat of destruction of evidence at teenage drinking party and claim of imminent harm to life or limb were sufficient to support a finding that officers had qualified immunity in civil suit brought pursuant to 42 U.S.C. § 1983 (2012)).

■ ¶ 31 As pertinent here, exigent circumstances can justify a warrantless search where there is a risk of immediate destruction of evidence. *Mendez*, 986 P.2d at 281. To satisfy the destruction of evidence exception, the police must have probable cause that contraband or evidence of criminal activity is located in the area to be searched

---

**2.** At the suppression hearing, the officers testified that defendant tried to prevent them from entering the home by standing in the way and that he "attempted to refuse any sort of police entry into the home." In contrast, at trial, defendant claimed that he had no intention of excluding the police from his home and that he hoped "they were going to help me remove all of these trespassers and drunken juveniles out of my house."

and an articulable basis for their reasonable belief that relevant evidence is about to be destroyed. *Id.* at 282; *People v. Crawford,* 891 P.2d 255, 258 (Colo.1995). The question is whether there is a real or substantial likelihood that the evidence might be removed or destroyed before the police can obtain a warrant. *Mendez,* 986 P.2d at 282. The perceived danger must be real and immediate, and "[t]he mere fact that evidence is of a type that can be easily destroyed does not, in itself, constitute an exigent circumstance." *Id.*

¶ 32 As an initial matter, we agree with the trial court that the offenses charged were sufficiently grave to justify a warrantless entry. *People v. Wehmas,* 246 P.3d 642, 648 (Colo.2010) (noting that a jailable offense is generally serious enough to justify warrantless entry).[3] However, we disagree with the trial court's conclusion that the panicking and fleeing teenagers created a risk of loss of evidence that underage individuals had been drinking at the party. Instead of entering the house without a warrant to prevent the loss of this "evidence," the officers could have simply stopped the fleeing teenagers to ascertain their ages and determine whether they had been drinking. Thus, the possibility that underage individuals would flee the party, by itself, would not have supported a warrantless entry on the ground that evidence of the individuals' identities might have been lost.

¶ 33 However, we think the trial court overlooked the potential destruction of the evidence of alcohol in the numerous bottles and cups the officers observed inside the home. The destruction of the alcohol inside the beverage containers is analogous to the destruction of illegal drugs, which is often the basis for the exigent circumstances exception. *See Kentucky v. King,* 563 U.S. 452, 131 S.Ct. 1849, 1857, 179 L.Ed.2d 865 (2011) (noting that issues regarding exigent circumstances based on the destruction of evidence occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain).

¶ 34 Destruction of all of the bottles and cups would have been a challenging feat in a short period of time. But destruction of the alcohol itself—the relevant evidence of underage drinking—by emptying those containers and rinsing them would have been nearly as easy as flushing illegal drugs. *See Crawford,* 891 P.2d at 259 (it is not necessary that every item of evidence be easily destroyed for the exigent circumstances exception to apply); *see also Howes,* 66 F.Supp.2d at 215 ("[A]n objectively reasonable officer in the circumstances faced by [the officers] could have concluded that, once [the officers] knocked on the front door and spoke to several partygoers, [some of the partygoers] would have attempted to destroy or at least conceal evidence of the teenagers' drinking had the officers waited patiently to obtain a warrant."); *Blackburn,* 960 A.2d at 1150 (potential that containers of alcohol remaining at party would be emptied justified warrantless entry to prevent destruction of evidence).

¶ 35 The officers had probable cause to suspect underage drinking was occurring even before they knocked on defendant's door. They had received reports by a named individual—a neighbor—that underage drinking was happening at defendant's residence.[4] *See People v. Crippen,* 223 P.3d 114, 117 (Colo.2010) (noting that veracity of average citizens who report crime is less problematic than veracity of criminal informants). They also saw teenagers leaving the residence, and one officer was told by two intoxicated teenagers that alcohol was being

---

3. We do not decide whether the crime of underage drinking—by itself—is a sufficiently grave offense to justify a warrantless entry. Instead, we address only whether underage drinking coupled with the presence of an adult homeowner can justify a warrantless entry, because the seriousness of the charge in that situation is potentially more significant—as demonstrated by the outcome of this case.

4. The officers were not required to have probable cause to walk down defendant's drive and knock on his door. *Kentucky v. King,* 563 U.S. 452, 131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (2011) ("When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do."). We assume, without deciding, that the officer entered the residence when he used his foot to prevent defendant from closing the door.

consumed inside.[5] Thus, the officers had probable cause to believe that contraband or evidence of criminal activity would be found inside the residence. *See People v. Pacheco,* 175 P.3d 91, 95 (Colo.2006) (even where informant's statements alone do not rise to the level of probable cause, probable cause may be established by independent police corroboration of the information).

¶ 36 The officers also had reason to believe that evidence would be destroyed. As they approached the residence, they could hear "kids calling that the police were here." Thus, the officers were justified in entering defendant's home to prevent the destruction of physical evidence. *See Mendez,* 986 P.2d at 278 (exigent circumstances existed where police feared occupant of hotel room had heard police activity in the hallway and would attempt to flush evidence of drug use); *People v. Mendoza–Balderama,* 981 P.2d 150, 160 (Colo.1999) ("If officers believe that someone on the premises knows of the drugs, is aware of imminent police intervention, and is in a position to easily dispose of the narcotics, then police might have reason to believe that the evidence was in danger of imminent destruction."); *People v. Bustam,* 641 P.2d 968, 972–73 (Colo.1982) (one factor relevant to a determination of exigency is whether those in possession of evidence or contraband are aware that police are closing in).

¶ 37 Accordingly, we conclude that the police officers' entry into defendant's home was legally justified, and the trial court did not err in admitting the evidence derived from that entry.

### III. Conclusion

¶ 38 The judgment is affirmed.

JUDGE TAUBMAN concurs.

JUDGE GABRIEL dissents.

JUDGE GABRIEL dissenting.

¶ 39 Although I agree with the majority's analysis of the peremptory challenge issue, I do not agree that the exigent circumstances

---

5. Under the "fellow officer rule," where law enforcement authorities are cooperating in an investigation, the knowledge of one is presumed

exception applies here. Nor do I agree with the People's arguments that the emergency aid exception also applies and that any error in the trial court's denying Terhorst's motion to suppress was harmless beyond a reasonable doubt. Accordingly, I respectfully dissent.

### I. Discussion

¶ 40 As the majority states, exigent circumstances can justify a warrantless search when there is a risk of the immediate destruction of evidence. *Mendez v. People,* 986 P.2d 275, 281 (Colo.1999). To establish that there was a risk of the immediate destruction of evidence, the prosecution must show that the police had an articulable basis to justify a reasonable belief that evidence is about to be removed or destroyed. *People v. Wehmas,* 246 P.3d 642, 648–49 (Colo.2010). The likelihood of destruction must be "real and immediate such that a warrant could not be obtained in time." *Id.* at 649; *see also People v. Glick,* 250 P.3d 578, 586 (Colo.2011) (noting that the police must have a reasonable suspicion that relevant evidence is in imminent danger of being destroyed). The mere fact that the evidence is of a type that could easily be destroyed does not alone constitute an exigent circumstance. *Wehmas,* 246 P.3d at 649.

¶ 41 In this case, I have seen nothing suggesting a real and immediate likelihood of the destruction of evidence. Rather, in my view, the evidence shows no more than that alcohol is the type of evidence that could easily be destroyed, which, as noted above, is insufficient. *See id.*

¶ 42 I am not persuaded otherwise by cases like *Mendez.* In *Mendez,* 986 P.2d at 282, our supreme court concluded that "there was a very real and substantial likelihood that contraband would continue to be destroyed" when an officer investigating a complaint at a motel "smelled the distinct odor of burning marijuana emanating from [the defendant's] room." The court reasoned that "[t]his odor indicated that evidence of a crime, that is, possession of marijuana, was

shared by all. *People v. Barry,* 2015 COA 4, ¶ 29, 349 P.3d 1139.

in the process of being burned and thereby destroyed." *Id.* Thus, in *Mendez,* unlike in this case, the officer had information beyond the mere fact that evidence *could possibly* be destroyed. He had evidence that it *actually* was being destroyed. *See id.*

¶ 43 Nor am I persuaded by the People's argument that the emergency aid exception applies here. Under the emergency aid exception, the prosecution must prove both that an immediate crisis existed and that assistance would probably have been helpful. *People v. Allison,* 86 P.3d 421, 426 (Colo. 2004). An officer's primary purpose must be to render emergency assistance, not to search for evidence. *Id.* Thus, an emergency search must be strictly limited by the exigency that created the emergency; the emergency cannot support a general exploratory search. *Id.* at 426–27.

¶ 44 To invoke the emergency aid exception, the police must have a reasonable basis approximating probable cause connecting the emergency to the area to be searched. *Id.* at 427. In this context, a reasonable basis requires more than a theoretical possibility that another's life or safety is in danger. *Id.* Instead, it requires a colorable claim that another's life or safety is in danger. *Id.* The mere possibility of an emergency is insufficient to allow the police to avoid the warrant requirement. *Id.*

¶ 45 Here, the evidence tended to show that an underage drinking party involving a large number of minors was taking place at Terhorst's home. In my view, this fact alone was insufficient to establish the requisite immediate crisis. Nor did it support a colorable and nonspeculative claim that another's life or safety was in danger. And as the above-described case law makes clear, the mere existence of probable cause does not alone establish the requisite emergency, as the People contend.

¶ 46 Accordingly, I do not believe that the emergency aid exception applies here.

¶ 47 Because I do not believe that either the exigent circumstances or emergency aid exception applies in this case, I would conclude that the trial court erred in denying Terhorst's motion to suppress. The question thus becomes whether this error was harmless beyond a reasonable doubt. *See Hagos v. People,* 2012 CO 63, ¶ 11, 288 P.3d 116, 119 (noting that preserved constitutional errors require reversal unless the reviewing court is able to say that the error was harmless beyond a reasonable doubt and that under this standard, an appellate court must reverse if there is a reasonable possibility that the error might have contributed to the conviction).

¶ 48 On the limited record presented in this case, and given the extent to which the prosecution relied on the evidence discovered in the course of the warrantless search of Terhorst's home, I am unable to say that the error was harmless beyond a reasonable doubt.

¶ 49 Accordingly, I would reverse the judgment and remand for a new trial.

## II. Conclusion

¶ 50 For these reasons, I respectfully dissent.